# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GUAVA, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civ. A. No. 1:12-cv-11880-FDS |
| | ) |
| JOHN DOE, | ) |
| | ) |
|     Defendant. | ) |

### INTERESTED PARTIES' JOINT MOTION FOR SANCTIONS

Interested parties 209.6.50.65, 209.6.72.13 and 66.189.69.147[1] (collectively, "Movants") respectfully move, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, for an order declaring Plaintiff Guava, LLC ("Plaintiff") a vexatious litigant and requiring its attorneys to pay the excess attorney's fees Movants reasonably incurred as a result of the harassing litigation tactics Plaintiff employed as it literally multiplied proceedings directed at Movants across the country, without subject matter jurisdiction. Such relief is warranted as further explained herein.

### PROCEDURAL HISTORY

**I.      Plaintiff Filed Suit in Illinois Seeking Discovery About Movants and Other Internet Subscribers, and the Court Suspended Discovery Pending Subscribers' Motions.**

Plaintiff filed suit against non-party Skyler Case ("Case") in Illinois state court, alleging that Case "and his coconspirators [had committed] computer fraud and abuse, conversion, breach of contract and civil conspiracy arising from unlawful computer-based breaches and data distribution." ECF No. 7-1, Complaint at ¶ 1, *Guava, LLC v. Case*, No. 2012-L-007363 (Ill. Circ. Ct. Cook Cty. June 29, 2012) ("*Guava I*"). Plaintiff sought leave to "issue subpoenas on several Internet Service Providers ('ISPs') to identify Case's unknown co-conspirators." ECF No. 9 p. 2; *see also* ECF No. 7-2, Agreed Order, *Guava I* (July 30, 2012).

---

[1] Movants are Internet subscribers denominated herein after the IP addresses assigned by their ISPs, by which Plaintiff alleges copyright infringement occurred. *See* ECF No. 1 ¶ 3; ECF No. 1-1; ECF No. 7 p. 1 n.1.

During the pendency of *Guava I*, the presiding judge, the Honorable Sanjay T. Tailor, expressed serious doubt as to the legal sufficiency of Guava's claims. In fact, he informed counsel for Guava that he did not see any possible "conspiracy" based upon their detailed explanation of what they allege transpired. Judge Tailor also directly questioned counsel for both Guava and the defendant, Skyler Case, as to whether they were involved in some sort of collusive arrangement because of the unusual nature of the litigation. An agreed order was entered permitting a broad net of discovery of alleged "co-conspirators" whilst defendant had filed an answer in which he admitted both the existence of and his purported participation in said conspiracy. Judge Tailor made it clear that he was concerned that the case was set up as a mechanism to provide the identities of an unknown number of John Doe subpoena targets for counsel for Guava to contact and shake down for settlements, as suggested in the objecting parties' motions to quash.

Obj. to Pl.'s Mot. for Early Discovery at p. 2, *Guava, LLC v. John Does 1-5*, 12-cv-8000 (N.D. Ill. Feb. 25, 2013), attached hereto as Exhibit A.

Movants filed joint motions with other Internet subscribers to oppose discovery. *See* ECF No. 7-4, Mot. to Quash and Mot. for Protective Order on Behalf of John Doe Movants, *Guava I* (Sept. 12, 2012) (Movants 209.6.50.65 and 209.6.72.13) & ECF No. 7-6, Mot. to Quash and Mot. for Protective Order on Behalf of John Doe Movants, *Guava I* (Sept. 25, 2012) (Movant 66.189.69.147). The *Guava I* Court ordered, in pertinent part:

(1)   Outstanding subpoenas not yet complied with by Internet service providers are stayed until further order of this court.

(2)   The plaintiff shall not issue any further subpoenas until further order of this court.

(3)   …

(4)   The hearing regarding all matters pending before the court including [Plaintiff] petitioners' as yet filed motion to renew subpoena compliance by third party ISPs [] Oct. 20, 2012 at 10:30 am.

ECF No. 7-7, Order at ¶¶ 1-2, *Guava I* (Oct. 4, 2012); *see also* ECF No. 17 p. 2.

The *Guava I* Court never lifted its Order staying all subpoenas and forbidding Plaintiff from issuing any further subpoenas until further order. Plaintiff never filed a "motion to renew subpoena compliance by third party ISPs" pursuant to that Order. ECF No. 7-7 ¶ 4.

Plaintiff voluntarily dismissed *Guava I*, in a case management order filed by Case's counsel, on February 20, 2013, attached hereto as Exhibit B.

## II.   Plaintiff Noticed Withdrawal of Its Subpoenas Seeking Discovery About Movants and Declared It Would Initiate Separate Litigation Against Defendants.

The day after the Illinois stay order, Plaintiff noticed withdrawal of its subpoenas related to 32 IP addresses assigned to Movants and other Internet subscribers who had opposed discovery, to the extent the subpoenas sought to identify those subscribers. *See* ECF No. 7-8, Pl.'s Notice of Withdrawal of Subpenas [*sic*] Relating to the Identity of Certain Internet Protocol Address Owners, *Guava I* (Oct. 5, 2012). Plaintiff declared, "Plaintiff will initiate separate litigation against the owners of those IP addresses, and, at present, does not intend to assert claims against them in this lawsuit." *Id.* p. 1. Plaintiff later explained why it had filed separate lawsuits against Movants: "because the Movants attempted to act and raise arguments as though they were defendants in this case, Plaintiff granted their wishes and initiated separate litigation against them in which they will now be actual defendants." ECF No. 7-9, Pl.'s Omnibus Resp. to Outstanding Mots. at p. 1, *Guava I* (Nov. 2, 2012). Plaintiff further declared that it had sued Movants in response to the actions of their attorney in *Guava I*: "Ms. Russell's representation turned these individuals from mere information sources to defendants." *Id.* p. 2. The subscribers to whom those 32 IP addresses were assigned were each represented by Attorney Russell. *See* Ex. A hereto at p. 3.

## III.   Plaintiff Filed this Action Seeking the Discovery Stayed and Withdrawn in Illinois.

Plaintiff opened this action on October 5, 2012, the same day it mailed notice of its subpoena withdrawal in *Guava I*. In its Complaint, filed on October 9, 2012, Plaintiff alleged "computer fraud and abuse, civil conspiracy, conversion and negligence arising from unlawful computer-based breaches and data distribution." ECF No. 1 at ¶ 1.

Plaintiff asserted that "Defendant is known to Plaintiff only by individual IP addresses," and alleged that the three Movants' IP addresses "were all assigned to Doe Defendant." *Id.* at ¶ 3; ECF No. 1-1. *See also* ECF No. 1 at ¶¶ 23 & 25.

Though *Guava I* was still pending in Illinois, Plaintiff did not notify this Court of any related pending cases on the civil cover sheet. ECF No. 1-2, Civil Cover Sheet at ¶ VIII.

On November 12, 2012, Plaintiff sought leave from this Court to issue subpoenas on the same ISPs for the same identifying information. ECF No. 5 at pp. 1-2. Plaintiff sought discovery related to the same 32 IP addresses,[2] assigned to Movants and other Internet subscribers, listed in its notice of withdrawal of its subpoenas. *Compare* ECF No. 5-1 *with* ECF No. 7-8. Plaintiff did not inform the Court that the *Guava I* Court had stayed subpoenas seeking the same discovery, had ordered Plaintiff not to issue further subpoenas without leave, and had not lifted its order.

The Court granted Plaintiff's request for leave to issue subpoenas on November 14, 2012. ECF No. 6. "Plaintiff served its subpoenas Movants' ISPs shortly thereafter." ECF No. 9 p. 2.

## IV.     Plaintiff Filed Eight Other Actions Seeking the Same Discovery in Other Courts, and Dismissed Three of the Actions in which Discovery Was Not Granted in Full.

Between October 5 and October 26, 2012, Plaintiff filed suit in this Court and eight other federal district courts in Alabama, Arizona, California, Connecticut, the District of Columbia, Georgia, Illinois, and Ohio,[3] asserting the same claims raised here, against Doe Defendants identified with some or all of the same 32 IP addresses (collectively, including this action, the

---

[2] Though Plaintiff lists 34 IP addresses, two of those are repeat entries; there are 32 unique entries on its list, filed first in *Guava I* and then in each of the parallel actions.

[3] In prior filings, Movants had also identified Plaintiff's simultaneous lawsuit in Michigan as yet another parallel action. *See* ECF No. 7 p. 4 n.3. Unlike each of the other parallel actions, Movants were not specifically identified by their IP addresses as targets of Plaintiff's Michigan lawsuit, so Movants have removed it from their tally here.

"parallel actions"); between October 15 and November 12, 2012, Plaintiff filed *ex parte* motions in each of those cases seeking leave to take the same discovery Plaintiff sought in this Court.[4]

Three Courts granted Plaintiff leave to serve subpoenas on the ISPs for Movants and the others: the District of Connecticut, the Middle District of Georgia, and this Court, as noted.[5]

The Southern District of Alabama denied Plaintiff discovery without clearer identification of which IP address Plaintiff alleged that complaint's Doe Defendant had used,[6] and rejected *ex parte* discovery as to the IP addresses of Movants and the other Internet subscribers. The Eastern District of California granted Plaintiff discovery as to the IP address associated with the Doe Defendant in that complaint, but denied discovery as to Movants and the others.[7] The District of Columbia denied Plaintiff's application absent a declaration setting forth the basis for its allegations.[8] Pursuant to

---

[4] *See* ECF No. 7-10, Complaint, *Guava, LLC v. John Doe*, 12-cv-00678 (S.D. Ala. Oct. 26, 2012) (*ex parte* motion Nov. 4, 2012). *See also Guava, LLC v. John Doe*, 12-cv-02158 (D. Ariz. Oct. 9, 2012) (*ex parte* motion Oct. 15, 2012); *Guava, LLC v. John Doe*, 12-cv-02514 (E.D. Cal. Oct. 5, 2012) (*ex parte* motion Oct. 17, 2012); *Guava, LLC v. John Doe*, 12-cv-01435 (D. Conn. Oct. 5, 2012) (*ex parte* motion Nov. 12, 2012); *Guava, LLC v. John Doe*, 12-cv-01661 (D.D.C. Oct. 6, 2012) (*ex parte* motion Oct. 17, 2012); *Guava, LLC v. John Doe*, 12-cv-00398 (M.D. Ga. Oct. 6, 2012) (*ex parte* motion Oct. 15, 2012); *Guava, LLC v. Does 1-5*, 12-cv-08000 (N.D. Ill. Oct. 5, 2012) (*ex parte motion* Oct. 17, 2012); *Guava, LLC v. John Doe*, 12-cv-02512 (N.D. Ohio Oct. 8, 2012) (*ex parte* motion Oct. 15, 2012).

[5] Order, *Guava, LLC v. John Doe*, 12-cv-01435 (D. Conn. Nov. 15, 2012); Order, *Guava, LLC v. John Doe*, 12-cv-00398 (M.D. Ga. Nov. 12, 2012); ECF No. 6.

[6] Order at pp. 7-8, *Guava, LLC v. John Doe*, 12-cv-00678 (S.D. Ala. Jan. 7, 2013). In that action, Plaintiff had alleged that the Doe Defendant had personally used all of the 32 IP addresses associated with Movants and the other IP subscribers. *Compare* ECF No. 7-8 *with* ECF No. 7-11.

[7] Order, *Guava, LLC v. John Doe*, 12-cv-02514 (E.D. Cal. Nov. 7, 2012) ("[P]laintiff's claim of civil conspiracy rests on the simple allegation that the Doe defendant is a member of a 'hacking community.' At this stage of the litigation, supported only by the bare bones assertion that defendant conspired with others, the court does not find expedited discovery with respect to the other identified IP addresses is appropriate."). The District of Arizona also allowed discovery only as to the IP address Plaintiff identified as belonging to the Doe Defendant in that complaint. Order, *Guava, LLC v. John Doe*, 12-cv-02158 (D. Ariz. Oct. 22, 2012).

[8] Minute Order, *Guava, LLC v. John Doe*, 12-cv-01661 (D.D.C. Oct. 18, 2012) ("the plaintiff must first submit a sworn declaration setting forth the basis for the plaintiff's allegation that those IP addresses were used 'to hack into, Plaintiff's protected computer systems'" (quoting *Ex Parte* Motion, id., at p. 1)).

Rule 41(a)(1), Plaintiff voluntarily dismissed each of those three actions by notice.[9] Plaintiff has likewise noticed dismissal of its District of Connecticut parallel action.[10]

Four of the parallel actions have been dismissed by Court orders: two for failure to timely serve pursuant to Rule 4(m),[11] a third for improper venue,[12] and this action, for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.[13]

Plaintiff's parallel action in the Northern District of Illinois is still pending.

## V.   Movants Moved for a Stay of the Proceedings that Was Denied and for a Protective Order that Was Granted in Part.

Movants jointly moved for a stay of the proceedings pending relief from the attorney's fees they incurred in *Guava I* on work rendered useless by Plaintiff refiling its claims in the parallel actions, and for a protective order to require Plaintiff to, among other things, withdraw any subpoenas issued in this action and the parallel actions. ECF No. 7. Plaintiff filed an opposition. ECF No. 9. The Court denied the stay, as it did not find that Movants "should be regarded as defendants." ECF No. 14 p. 2. The Court granted the motion for protective order in part, restricting Plaintiff's use of any discovery obtained pursuant to the Court's discovery authorization to that reasonably necessary to conduct this litigation. ECF No. 15.

## VI.   Plaintiff Continued Multiplying the Proceedings, Filing New Actions in Other Courts Seeking the Same Discovery.

On February 8, 2013, two days after the Court issued its protective order limiting use of discovery obtained about the 32 IP addresses, including Movants, to its use in this action, Plaintiff

---

[9] Pl.'s Notice of Voluntary Dismissal of Action, *Guava, LLC v. John Doe*, 12-cv-02514 (E.D. Cal. Feb. 11, 2013); Pl.'s Notice of Voluntary Dismissal of Action, *Guava, LLC v. John Doe*, 12-cv-01661 (D.D.C. Feb. 15, 2013); Notice of Voluntary Dismissal of Action without Prejudice, *Guava, LLC v. John Doe*, 12-cv-00678 (S.D. Ala. Apr. 9, 2013).

[10] Notice of Voluntary Dismissal of Action without Prejudice, *Guava, LLC v. John Doe*, 12-cv-01435 (D. Conn. Apr. 26, 2013).

[11] Order, *Guava, LLC v. John Doe*, 12-cv-02158 (D. Ariz. filed Feb. 7, 2013); Order, *Guava, LLC v. John Doe*, 12-cv-00398 (M.D. Ga. Dec. 21, 2012).

[12] Order, *Guava, LLC v. John Doe*, 12-cv-02512 (N.D. Ohio Oct. 16, 2012) (

[13] ECF No. 19 & 21.

sought to create another opportunity to obtain the same discovery. Through Attorney Ruggiero, Plaintiff filed a Complaint in the Southern District of New York virtually identical with that filed in this Court, and in the other parallel actions. Complaint, *Guava, LLC v. John Doe*, Case 1:13-cv-00940 (S.D.N.Y. Feb. 8, 2013) attached hereto as Exhibit C. Plaintiff again alleged that Movants' IP addresses were among the 32 IP addresses assigned to the single Doe Defendant by his or her ISP. See *id.* ¶ 3; see also Complaint Exhibit A, *Guava, LLC v. John Doe*, Case 1:13-cv-00940 (Feb. 8, 2013) (attached hereto as Exhibit D). Plaintiff noticed its voluntary dismissal of the New York action on April 30, 2013.

Similarly, between February 5 and February 7, 2013, Plaintiff opened six cases in the District of Minnesota and two cases in the Eastern District of California against Doe Defendants. Plaintiff noticed dismissal in each of those eight cases between March 12 and March 15, 2013.

## VII. Movants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Was Granted.

On February 13, 2013, Movants moved to dismiss pursuant to Rule 12(h)(3) for lack of subject matter jurisdiction, arguing that the *Rooker-Feldman* doctrine precludes Plaintiff from using this and other federal district courts to bypass the *Guava I* order suspending discovery. ECF No. 17. Plaintiff did not file a timely opposition before the March 8, 2013 status conference, at which the Court granted Plaintiff a three-week extension and scheduled an April 4, 2013 motion hearing. ECF No. 19. Plaintiff also did not file an opposition prior to that motion hearing. ECF No. 20. At the motion hearing,[14] before any oral argument, Plaintiff's counsel conceded the motion, informing the Court, "You may grant the motion." The Court did so from the bench, allowing Plaintiff thirty days to move to reopen the case, and allowing Movants thirty days to file this request for relief. *Id.* Plaintiff has not moved to reopen the case.

## LEGAL STANDARD

---

[14] The Court's clerk called Plaintiff's counsel at the scheduled hearing time. Attorney Ruggiero was evidently unaware that the matter had been scheduled for hearing, stating, "I forgot there was a hearing."

The imposition of sanctions is a matter committed to the discretion of the court. *See Silva v. Witschen*, 19 F.3d 725, 730 (1st Cir. 1994).

Under 28 U.S.C. § 1927, sanctions may be imposed against lawyers who "acted unreasonably and vexatiously in multiplying proceedings." *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so." *Id.* at 632.[15] "In this circuit, courts use a mainly 'objective standard' for the purposes of determining when a lawyer's actions are unreasonable or vexatious." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008). For Section 1927 sanctions to be imposed, "an attorney's actions must evince a studied disregard of the need for an orderly judicial process . . . or add up to a reckless breach of the lawyer's obligations as an officer of the court. . . . Bad faith is not an essential element, but a finding of bad faith is usually a telltale indicium of sanctionable conduct." *Id.* (*citing, inter alia, Cruz*, 896 F.2d at 631).

"'A primary aspect of [a federal court's discretion to exercise its inherent powers] is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Balerna v. Gilberti*, 708 F.3d 319, 323 (1st Cir. 2013) (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). "It is beyond serious dispute that a district court may use its inherent powers to assess attorneys' fees against a party that has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 13 (1st Cir. 1995) (*quoting Chambers*, 501 U.S. at 45-46). "[A] district court exercising its inherent powers in this fashion must describe the bad faith conduct with sufficient specificity, accompanied by a detailed explanation of the reasons justifying the award." *Id.* (internal quotations omitted).

## ARGUMENT

---

[15] *See also Baker v. Nesi,* Civ. A. No. 11-11899-DLC, 2011 U.S. Dist. LEXIS 138853, *17-18 n.9 (D. Mass. Dec. 2, 2011) ("Vexatious conduct occurs where a party's actions are frivolous, unreasonable or without foundation… Subjective bad intent is not necessary to justify a finding of vexatious conduct … and bad-faith behavior in this context is equivalent to bringing suit on a frivolous claim, meaning a claim that no reasonable person could suppose to have any merit.") (citations omitted) (case was vexatious where Court lacked jurisdiction under *Rooker-Feldman*).

## I.       Movants Have Standing to Seek Attorney's Fees.

Movants have standing to move, under Section 1927, to recover attorney's fees they had to incur in resisting Plaintiff's attempts to make them unwilling participants in this action and others. By its own account, Plaintiff sought to bring Movants into the case as defendants: In *Guava I*, Plaintiff declared that the Movants had in fact been made defendants in other litigation, i.e., this action and the parallel actions. "Plaintiff granted their wishes and initiated separate litigation against them in which they will now be actual defendants." ECF No. 7-9 p. 1. "Ms. Russell's representation turned these individuals from mere information sources to defendants." ECF No. 7-9 p. 2. Plaintiff identifies Movants' IP addresses with a Doe Defendant's allegedly wrongful acts. See ECF No. 1 ¶ 3; *see also id.* ¶¶ 21-22 (discussing "Defendant's IP addresses").

Still, Plaintiff declares, "Movants are not parties to this case." ECF No. 9 p. 6. Likewise in *Guava I*, Plaintiff contended that the Movants were only "disinterested outsiders," ECF No. 7-9 p. 2, though Plaintiff considered their IP addresses so pertinent to so many of its cases that it sought expedited discovery. The Court has not found that Movants "should be regarded as defendants in this action." ECF No. 14 p. 2. But even if Movants are not in fact defendants here, Plaintiff gave them standing to seek attorney's fees by trying to sweep them into this action and the parallel actions involuntarily.

A non-party, whom a party seeks to add as a defendant or otherwise bring into the action, has standing to seek sanctions under 28 U.S.C. § 1927 or Rule 11, even if the party does not succeed in bringing the non-party into the action.[16] *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1173 (D.D.C. 1985) (Section 1927 and Rule 11 sanctions applicable to party's procedurally improper petition to have non-party witness held in contempt of court); *Gen. Elec. Mortg. Ins. Corp. v. Chen*, Civ. A. No. 04-11456-RWZ, 2005 U.S. Dist. LEXIS 19246 (D. Mass. Sept. 6, 2005) (deciding Section 1927

---

[16] If the rule were otherwise, a non-party who succeeds in warding off a plaintiff's vexatious maneuvers would have no standing to seek recompense, while one who fails to prevent those maneuvers would.

motion filed by "interested party"). "Generally, non-parties to a case in litigation cannot bring motions for sanctions. … However, 'parties to an action and certain other participants have standing to move for sanctions under Rule 11.'"[17] *Hochen v. Bobst Group, Inc.*, 198 F.R.D. 11, 14 (D. Mass. 2000) (*quoting Sean Michael Edwards Design, Inc.*, 1999 U.S. Dist. LEXIS 17442, *3 (S.D.N.Y. 1999)). "Those non-parties who are brought in or are attempted to be brought into litigation involuntarily by one process or another have standing" to pursue sanctions. *Id.* at 15 (citing, *inter alia*, *Westmoreland*).

In this case and the parallel actions, Plaintiff sought to bring Movants into litigation by pursuing discovery about them for the stated purpose of naming them as defendants. *See* ECF No. 5 p. 6 ("the Plaintiff needs the Defendant and the co-conspirators' actual contact information to be able to communicate with them and *name them in this lawsuit*") (emphasis added); *see also* ECF No. 7-9 p. 2 ("Plaintiff granted their wishes and initiated separate litigation against them in which they will now be actual defendants."). Thereby, Plaintiff directly implicated Movants' "significant privacy interests in the identifying information obtained through the subpoenas that could be made public or used to unfair coercive effect."[18] ECF No. 14 p. 3. Forum shopping in court after court, Plaintiff has sought *carte blanche* for discovery designed to engineer extortive settlements. In a typical settlement demand letter to an Internet subscriber whose name Plaintiff obtained in discovery in *Guava I*, Plaintiff demands $4,000. See Paul Duffy, Demand Letter Re: Guava LLC v. Skyler

---

[17] The same analysis governs under either Rule 11 or Section 1927. *Hochen*, 198 F.R.D. at 13-15. In *Hochen*, this Court framed the non-party standing analysis as consistent under either Rule 11 or Section 1927, noting "'any interpretation [of Rule 11] must give effect to the Rule's central goal of deterrence' … [and] this goal … applies equally to § 1927." *Id.* at 14 (*quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). Indeed, the rationale supporting a non-party's standing to move for sanctions is even stronger for Section 1927, which serves not only deterrence but also to compensate the one wronged. "'The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation by lessening frivolous claims or defenses.'" *Hochen*, at 16 (*quoting Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990)). By contrast, "the fairest reading of section 1927 and its legislative history suggests that the statute's purpose is both to 'deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'" *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.2d 228, 247 (1st Cir. 2010) (*quoting Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005)).

[18] Plaintiff attempted to deny that privacy interest in this Court, arguing that "Movants are not subject to *any* burden or any expense as a result of their ISP's compliance with the subpoena." ECF No. 9 p. 1.

Case (available at http://www.scribd.com/doc/106321965/guava-llc-v-skyler-case-non-party-settlement-letter).[19] Avoiding such costs necessitated Movants' legal expenses.

In each of its parallel federal actions, Plaintiff has waged an impermissible collateral attack on the state court order in *Guava I*, attempting to bring Movants into litigation against their will. "In resisting this attempt, [the non-parties] had to incur costs and attorney's fees." *Hochen* at 15 (finding non-party had standing to seek sanctions), *aff'd sub. nom. Nyer v. Wintherhur Int'l*, 290 F.3d 456 (1st Cir. 2002). Plaintiff must bear the costs imposed on Movants.

## II.   Plaintiff's Vexatious Practices in this Action Strongly Support Sanctions.

This case is one of many Plaintiff filed in order to vex and harass Movants. Plaintiff's pursuit of this litigation has been harassing, annoying, vexatious and in bad faith. When the *Guava I* Court stayed discovery of Movants' identifying information and ordered Plaintiff to issue no further subpoenas, Plaintiff directly contravened the order by opening this action as one of many opportunities to issue subpoenas seeking the same information. Under the *Rooker-Feldman* doctrine, the Court lacked jurisdiction over the subject matter of this action. ECF No. 20. The parallel actions were all jurisdictionally unfounded for the same reasons.

The claims themselves seem to have been beside the point. Evidently, Plaintiff never intended to adjudicate them, and filed suit where lack of jurisdiction made any ruling on the merits improper. But some or all of them were also clearly unreasonable as pleaded. Plaintiff failed to state a claim under the CFAA, having not alleged "damage" or "loss" sufficiently as defined under the statute. *See generally* ECF No. 7-3 pp. 8-10; ECF No. 7-5 pp. 8-10. Plaintiff's state law claims appear to be preempted by the Copyright Act. *See* ECF No. 7 p. 13. Plaintiff's theory of a

---

[19] Notably, in the demand letter's signature block, Plaintiff's counsel Paul Duffy holds himself out as licensed to practice in Massachusetts. *Id.* p. 2. But according to the Board of Bar Overseers, Attorney Duffy has not been admitted to practice in Massachusetts since 1995. Mem. in Support of Def.'s Mot. Requiring Pl. to Post Bond for Costs at p. 13 n. 17, *AF Holdings, LLC v. Chowdhury*, Civ. A. No. 12-cv-12105 (D. Mass. filed Jan. 30. 2013).

conspiracy among strangers faced grave doubts in *Guava I*, as it has elsewhere.[20]  Plaintiff's negligence claim, imputing liability based on an Internet subscriber's unsecured wireless, is similarly unfounded; no claim has ever prevailed on those grounds. *See Liberty Media Holdings, LLC v. Tabora*, No. 12 Civ. 2234, 2012 U.S. Dist. LEXIS 94751, at *4 (S.D.N.Y. July 9, 2012) ("The negligence claim suffers from at least two problems, each independently fatal to its survival."); *AF Holdings LLC v. Rogers*, No. 12-cv-1519, 2013 U.S. Dist. LEXIS 11929, at *9-10 (S.D. Cal. Jan. 29, 2013) ("To the extent that Plaintiff's negligence claim alleges that Defendant failed to properly secure his internet connection or failed to properly monitor the use of his secured internet connection by others, Plaintiff's claim fails because there is no underlying duty.") (Plaintiff's counsel Brett Langdon Gibbs representing plaintiff); *AF Holdings, LLC v. Doe*, No. C 12-2049, 2012 U.S. Dist. LEXIS 125306 (N.D. Cal. Sept. 4, 2012) (Plaintiff's counsel Gibbs representing plaintiff). The facial implausibility of Plaintiff's claims supports a finding of bad faith.

The many actions implicating Movants are an unusually literal instance of "mulitplying the proceedings" proscribed by Section 1927. "Congress's use of the verb 'multipl[y]' in the text of the statute clearly contemplates that, to be sanctionable thereunder, conduct must have an effect on an already initiated proceeding," *Jensen*, 546 F.3d at 66. Plaintiff's multiplication had a calculated effect on *Guava I.* By bringing the parallel actions immediately after the stay order, alleging the same core factual allegations raised in *Guava I* and pleading the same CFAA and conspiracy claims, Plaintiff voided the effect of the stay order, neutralized any benefit Movants could derive from their victory over Plaintiff's first subpoenas against them, and "rendered essentially all of [Movants'] expenses on the prior action useless." ECF No. 7 p. 9.

To ensure this neutralizing effect, Plaintiff did not inform this Court that its claims had already been presented. In the three days before filing its Complaint in this Court on October 9,

---

[20] See Ex. A. p. 2; *see also* n. 7 *supra* (*quoting* Order, *Guava, LLC v. John Doe*, 12-cv-02514 (E.D. Cal. Nov. 7, 2012)); *see also generally Pac. Century Int'l, Ltd. v. John Does 1-37*, 282 F.R.D. 189, 195 (N.D. Ill. 2012) ("based on what has been pleaded, it does not appear plausible that plaintiffs could plead the existence of a conspiracy") (Plaintiff's counsel Paul Duffy representing plaintiff).

2012, Plaintiff had filed six other parallel actions also arising from *Guava I. See* n. 4 *supra.*
Plaintiff's Civil Cover Sheet left a blank space where a list of prior related proceedings belonged,
making no mention of *Guava I* or the parallel actions. ECF No. 1-2, Civil Cover Sheet at ¶ VIII.

> Plaintiff's omissions helped delay the Court's recognition that it lacked jurisdiction.
>
> Every federal judicial officer knows that subject-matter jurisdiction is a *sine qua non* for a federal proceeding. … As lawyers who practice in federal courts certainly know, they "have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress; it is precisely to impose a duty of assistance on the bar that lawyers are called 'officers of the court.'"

*Micrometi Corp. v. Tranzact Techs., Inc.*, 656 F.3d 467, 471 (7th Cir. 2011) (*quoting BEM I, L.L.C.*
*v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002)).

An attorney's failure to recognize the jurisdictional bar of the *Rooker-Feldman* doctrine is
objectively unreasonable and subjects that attorney to sanctions. *Jordaan v. Hall*, 275 F. Supp. 2d
778, 789 (N.D. Tex. 2003). Yet rather than conceding the lack of subject matter jurisdiction, Plaintiff
chose to delay further. At the second status conference, having already exceeded the deadline to
respond to the motion to dismiss, Plaintiff obtained a three-week extension. ECF No. 19. Plaintiff
neither responded nor noticed dismissal, instead making the Court and Movants prepare for and
attend a motion hearing three weeks later. It was only at that hearing, once roused by the Court to
attend telephonically, that Plaintiff at last mentioned that it would not oppose the motion to dismiss.

By that point, proceeding was impossible even if jurisdiction had not been improper.
Plaintiff had raised and dismissed the same claim in so many courts that *res judicata* barred any
judicial relief. When a plaintiff has twice "dismissed any federal- or state-court action based on or
*including the same claim*, a notice of dismissal operates as an adjudication on the merits." Fed. R.
Civ. P. 41(a)(1)(B) (emphasis added). Plaintiff raised the same claims in this Court that it had raised
in its action in the Eastern District of California, voluntarily dismissed on February 13, 2013; in the
District of Columbia action, voluntarily dismissed on February 15, 2013; and in *Guava I*, voluntarily
dismissed on February 20, 2013. *See* n. 9 *supra.* "In such a case, res judicata bars a subsequent third

suit, even if (as here) the notice states that the second dismissal is without prejudice." *Wicks v. Putnam Inv. Mgmt., LLP*, No. 04-10988, 2005 U.S. Dist. LEXIS 4892, at *8 (D. Mass. Mar. 28, 2005) (citing 8 James Wm. Moore, Moore's Federal Practice § 41.33(7)(a) (3d ed. 2004)). *See also Bolivar v. Pocklington*, 975 F.2d 28, 31 n.5 (1st Cir. 1992) (affirming district court's conclusion "that, even though the notice of dismissal purported to dismiss the action 'without prejudice,' it nonetheless operated as an adjudication upon the merits under the 'two-dismissal' rule in Fed. R. Civ. P. 41(a)(1)"). "A second notice of dismissal not only closes the file, it also closes the case with prejudice to the bringing of another." *Am. Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963). Continuing to litigate where no case could lie was a vexatious waste of the resources of the Court and Movants.

III. **Plaintiff's Vexatious Practices in Multiple Actions Involving Movants Strongly Support Sanctions.**

Sanctions under Section 1927 can be warranted by the "filing of identical lawsuits nationwide… in various jurisdictions …[if] plotted … in bad faith." *Kerner v. Cult Awareness Network*, 843 F. Supp. 748, 750 (D.D.C. 1994). When a plaintiff files claims precluded by a prior Court holding, which "appear to be an attempt to circumvent that holding … [the later] lawsuit is at least frivolous, and possibly vexatious, and it would be reasonable for the Court to conclude that sanctions are warranted." *Steele v. Ricigliano*, 789 F. Supp. 2d 245, 250 (D. Mass. 2011). Plaintiff has "filed additional actions arising from the same nucleus of operative facts," and these proliferating lawsuits against essentially the same group of defendants border on harassment." *Id.*

Plaintiff was especially vexatious in pursuing Movants in multiple courts at once. Simply keeping track of the multiple fronts of Plaintiff's attack imposed extraordinary investigative costs on Movants. Each time Plaintiff issued subpoenas seeking Movants' identifying information to their ISPs, Movants were required to again inform the ISPs of the procedural status and legal and jurisdictional deficiencies in each case that left the ISPs with no basis to make the reqested

disclosures. A bad faith finding would be supported by Plaintiff's decision to initiate separate litigation only against Internet subscribers represented by Attorney Russell, one of several attorneys who represented subscribers in *Guava I*. Plaintiff's own statements indicate that its attempts were made in bad faith as retribution against Movants and their counsel's success in *Guava I*. *See* ECF No. 7-9 p. 2 ("Ms. Russell's representation turned these individuals from mere information sources to defendants.").

"[T]his is frivolous and vexatious litigation. Legal disputes must be resolved in a single proceeding. Nine suits -- one in state court, eight in federal court -- is eight too many." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (per *Rooker-Feldman*; "only the Supreme Court of the United States may review decisions of state courts in civil litigation"). Plaintiff had one shot at Movants in state court; it is now at ten federal actions and counting.

## IV.    Plaintiff's Predatory, Bad Faith Litigation Practices Strongly Support Sanctions.

Plaintiff is an unusually active repeat player in state and federal courts, in which it runs a brazen racket to strong-arm settlements of claims it has no intention of pursuing in good faith to trial on the merits. Plaintiff has filed dozens of cases, like *Guava I*, against a single defendant, as a springboard to obtain discovery against hundreds or thousands of non-party alleged co-conspirators. In *Guava I*, for instance, Plaintiff was permitted to seek discovery of personally identifying information from untold numbers of Internet subscribers from each of over 300 ISPs. ECF No. 7-2. Its routine is to voluntarily dismiss once it collects as many names and settlements as a given case will bear, before being required to address the merits.

Collusion by Plaintiff underscores the oppressive nature of this action. The *Guava I* Court expressed deep concerns about apparently collusive behavior between the parties. Ex. A hereto at p. 2. Shortly before entering its discovery order, that Court asked counsel for Plaintiff and Case, "Are you in bed with each other?" ECF No. 12 p. 1 n.1. Those concerns have been borne out elsewhere. In at least one other case, Plaintiff has evidently arranged for a straw defendant who avoided paying

Plaintiff's settlement demands by instead "agree[ing] to be sued" as a named defendant in a new case where Plaintiff could subpoena new names of alleged co-conspirators, getting fresh prey for coercive settlements. ECF No. 13-1, Aff. of Spencer Merkel pp. 1-2; *see also* Hearing Tr., *Guava, LLC v. Merkel*, No. 27-CV-1220976, at pp. 6-7 (Minn. Dist. Ct. Hennepin Cty. Jan. 25, 2013), attached as Exhibit E hereto.[21]

As Movants have reasoned, "[a]rranging strawman defendants is consistent with Plaintiff's aversion to *bona fide* litigation." ECF No. 13 p. 3; *see also* ECF No. 12 pp. 1-2. This practice keeps Plaintiff's settlement mill in motion without any of the risks a genuine defendant might raise, e.g., affirmative defenses, counterclaims, objections, discovery requests, or dispositive motions. Exhibit E p. 21 (Plaintiff's counsel "haven't even asked [the named defendant] for his computer or for discovery or deposition. That's not why they're seeking discovery they're looking for this third party, non-party discovery to identify more targets."). It is an abuse of the Courts, and of all affected third parties, to proceed on that basis.

*Guava I* appears to have been based on the same impropriety. Plaintiff had secured Case as a defendant willing to admit, even before the complaint was filed, "the existence of and his participation in the [alleged] conspiracy." ECF No. 7-1 ¶ 16 (*Guava I* Complaint). Plaintiff then orchestrated Case's agreement to an order authorizing discovery about Movants and untold thousands of others. Plaintiff's less than adversarial means to more readily obtain names for settlement targets are not disputes fit for adjudication in any court. As Plaintiff itself declared in *Guava I*, "courts only have subject matter jurisdiction over justiciable matters, which are matters in controversy between an actual plaintiff and an actual defendant." ECF No. 7-9 at p. 3. Its own

---

[21] In that case, maximizing the potential for collusion with the named defendant, Plaintiff helpfully arranged for his legal representation when it filed suit against him outside his home state. Exhibit E pp. 17-20 (testimony by defendant's attorney about being recruited by Plaintiff's counsel: "Before I was involved in the case they said essentially well we don't know any attorneys in Oregon but if you're interested we could sue you in Minnesota and we know a potential pro bono attorney for you. [The defendant] agreed.").

tactics in that case suggest that it proceeded without a justiciable controversy at that stage of Plaintiff's vexatious pursuit of Movants as well. Such practices richly deserve sanction.

## V.      An Award of Reasonable Attorney's Fees Is Appropriate.

One wronged in litigation "cannot be made completely whole," absent an award of legal expenses. Jane P. Maller, Punitive Attorneys' Fees for Abuses of the Judicial System, 61 N.C.L. Rev. 613, 616 (1983). Letting Plaintiff and its counsel shrug off the costs their ministrations impose would help them maintain a "legalized form of blackmail that encourages frivolous claims and adds to the congestion of courts." *Id.* at 617. *See generally* Gideon Parchomovsky and Alex Stein, The Relational Contingency of Rights, 98 Va. L. Rev. 1313, 1320 (2012) (discussing "asymmetric litigation costs"; "certain entitlement holders will find themselves helpless in the face of meritless, and oftentimes downright extortionary, claims"); *see also id.* at 1325 n. 29.

The Court retains power to impose sanctions though subject matter jurisdiction is absent. "Jurisdiction to sanction does not require subject matter jurisdiction over the case but rather requires a showing of authority to sanction." *Blanco River, LLC v. Green*, 457 Fed. App'x 431, 438 (5th Cir. 2012). Such authority exists under Section 1927 and the Court's inherent powers.

### A.      An Award of Reasonable Attorney's Fees Is Appropriate under Section 1927.

Sanctions under Section 1927 can be warranted by evidence of a plaintiff's "bad faith in choosing a multiple-district litigation strategy." *Kerner v. Cult Awareness Network*, 843 F. Supp. 748, 750 (D.D.C. 1994) (questioning "[t]he scattershot litigation strategy of plaintiff's counsel – filing identical lawsuits nationwide"). Plaintiff imposed a burden on the Interested Parties in the original action, then multiplied the proceedings, much as the Agent Smith character in *The Matrix Reloaded* replicated himself virally when attacked. Plaintiff exhibited bad faith in filing ten parallel actions targeting Movants and other Internet subscribers, harassing them in apparent retaliation for their successful motions in *Guava I*.

The purpose of Section 1927 "is both to 'deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'" *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.2d 228, 247 (1st Cir. 2010) (*quoting Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005)). Both deterrence and compensation are fully called for here.

### B.     An Award of Reasonable Attorney's Fees Is Appropriate under the Court's Inherent Authority.

Even if Section 1927 did not apply, sanctions would be appropriate. "When sanctions are not expressly authorized by 28 U.S.C. § 1927 or the Federal Rules, a district court may invoke its inherent power to award attorneys' fees and costs against parties or attorneys who 'act in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Galanis v. Szulik*, 841 F. Supp. 2d 456, 460 (D. Mass. 2011) (*quoting Chambers v. NASCO, Inc*., 501 U.S. 32, 45-46 (1991)). "[A] litigant can't be allowed to file repeated meritless suits with impunity just so long as he does not protract any one of them unreasonably. A court has inherent power, which is to say a common law power, to punish by an award of reasonable attorneys' fees or other monetary sanction, or to prevent for the future by an injunction, misconduct by lawyers appearing before it." *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010). The Court's inherent power "reaches both conduct before the court and that beyond the court's confines." *Chambers,* 501 U.S. at 43-44.

"The ability to sanction vexatious litigants falls within the inherent power of the federal courts." *Zahran v. Frankenmuth Mut. Ins. Co.*, No. 97-1712, 1998 U.S. App. LEXIS 35295, at *21 (7th Cir. Sept. 17, 1998) (*citing Chambers*, 501 U.S. at 43-46, and *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 540-54 (1991)). "In this regard, the courts are obligated to allocate their resources so as to assure that the interests of justice are served and the courthouse doors remain open to all, not simply to the relentless." *Id*. at *22 (citations omitted).

It is appropriate for this Court to "invoke its inherent powers to sanction the plaintiff and his counsel for filing a frivolous lawsuit for an improper purpose." *Galanis*, 841 F. Supp. 2d at 461.

*Galanis* is instructive; as in this action, the plaintiff filed suit alleging, among other counts, civil conspiracy, conversion, and violation of the Computer Fraud and Abuse Act, and voluntarily dismissed the suit a few months later. *Id.* at 458. This Court found conduct constituting bad faith and justifying an award of reasonable attorney's fees and expenses where (1) "[t]he allegations in the complaint are not factually supported," *id.* at 461; (2) plaintiff's counsel "breached its duty … to investigate the factual basis for the complaint," *id.* at 462; and (3) "[t]he complaint was filed for an improper purpose." *Id.*

The same circumstances justify an award of Movants' reasonable attorney's fees. The Court in the District of Columbia parallel action found the factual allegations insufficient to support even Plaintiff's discovery request. Minute Order, *Guava, LLC v. John Doe*, 12-cv-01661 (D.D.C. Oct. 18, 2012) ("the plaintiff must first submit a sworn declaration setting forth the basis for the plaintiff's allegation that those IP addresses were used 'to hack into, Plaintiff's protected computer systems'"). Plaintiff's material allegations, as in *Galanis*, "may have been unreliable and perhaps even false," *Galanis*, 841 F. Supp. 2d at 462. Plaintiff unreasonably contended that a single Doe Defendant committed tortious acts using three different IP addresses, provided by two different ISPs, located at three different locations across Massachusetts. *See* ECF No. 7 p. 11. Moreover, Plaintiff brought this action and the parallel actions for a host of improper purposes, including: to circumvent the *Guava I* discovery order and neutralize its effect; to punish Movants and their counsel for obtaining that order; to impose additional, disproportionate costs on Movants, compounding the nuisance value with each new action; to overwhelm Movants with the sheer volume of parallel actions, bullying them toward settlements unrelated to the merits; and to shop for a more hospitable forum where its settlement mill might run with less oversight. Preventing such abuse of the judicial system is well within the Court's inherent authority "to assess attorney's fees as a sanction for bad faith conduct in litigation." *Chambers*, 501 U.S. at 42.   This case offers an unusual multitude of reasons why such sanctions are warranted.

**C.    This Court Should Order An Award of Reasonable Attorney's Fees Is Appropriate under the Court's Inherent Power.**

Plaintiff, at the hearing, demurred from any award of attorney's fees incurred as part of *Guava I*, which were the subject Movants' prior motion for Rule 41(d) costs. *See* ECF No. 7. Movants do not seek to be reimbursed for such costs, nor do Movants seek an award for the costs of preparing and filing the Rule 41(d) motion itself.

Movants do not seek a windfall. They do not even demand to be made fully whole after this misadventure. They seek only an award in an amount that is reasonably likely to deter Plaintiff from repeating its vexatious behavior, and that will fairly compensate them for attorney's fees they incurred in preparing their successful Rule 12(h)(3) motion to dismiss, preparing for and attending hearings and scheduling conferences, and conferring with counsel and Movants' ISPs. Plaintiff had no reasonable basis to file this action, as the Court was without jurisdiction, yet Plaintiff litigated in bad faith, contravening direct orders of the *Guava I* court, and vexatiously multiplied the proceedings. Both Section 1927 and the Court's inherent authority support shifting to Plaintiff the costs Movants bore to point that out. Should this motion be granted, Movants will submit a petition specifying the amount of fees Movants reasonably incurred to that end.

## CONCLUSION

WHEREFORE Movants 209.6.50.65, 209.6.72.13 and 66.189.69.147 respectfully request that the Court grant this Motion, declare Plaintiff Guava, LLC a vexatious litigant, and require its attorneys to pay the Movants' excess attorney's fees incurred in this action; and further, that this Court grant Movants leave to submit a petition on the amount of fees and costs Movants reasonably incurred, and grant Movants such other relief to which they are entitled.

Respectfully submitted,

Dated: May 6, 2013                    /s/  Daniel G. Booth

Daniel G. Booth (BBO# 672090)
BOOTH SWEET LLP
32R Essex Street, Suite 1
Cambridge, MA 02139
Telephone: (617) 250-8602
Facsimile: (617) 250-8883

*Counsel for Interested Parties 209.6.50.65,
209.6.72.13 and 66.189.69.147*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

The undersigned counsel hereby certifies that on April 5, 2013, I attempted to resolve or narrow the issues addressed in the foregoing motion by sending an email to Plaintiff's counsel of record for each of the parallel actions. Despite correspondence with Attorney Ruggiero and Attorney Duffy, we were unable to resolve the issues presented.

/s/  Daniel G. Booth

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2013, I electronically filed the foregoing Interested Parties' Joint Motion for Sanctions by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for Plaintiff as identified on the Notice of Electronic Filing.

/s/  Daniel G. Booth